IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT MCFARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-774-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff brings this proceeding pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for social security disability benefits. Plaintiff asserts disability beginning January 12, 1998, due to the progressive worsening of a left leg injury suffered in a motor cycle accident in 1977 and ostioarthritis. The Social Security Administration awarded plaintiff benefits for a closed period of

1 - ORDER

January 12, 1998 to August 1, 1999. After an appeal seeking ongoing benefits and after a hearing, an administrative law judge (ALJ) determined that plaintiff medically improved to the point that he was not disabled as of August 1, 1999.

Plaintiff contends the ALJ erred in: (1) finding that plaintiff did not meet or equal the listed impairments; (2) failing to give proper weight to plaintiff's medical providers; (3) finding plaintiff not entirely credible; (4) relying on erroneous vocational testimony; and (5) failing to fully and properly consider third party testimony.

1.   Listed Impairments

At step three of the sequential evaluation process, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulation No. 4. The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." See 20 C.F.R. § 404.1525. If a claimant meets or equals a listed impairment he will be found disabled at this step without further inquiry. See 20 C.F.R. § 404.1520(d).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment,

or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. Plaintiff claims that he meets listed impairment 1.02 and 1.03.

> Listing 1.02 involves a
>
> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P. App. 1.

> Listing 1.03 involves
>
> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

Id.

The ALJ determined that plaintiff did not meet the listings during the period in question (August 1, 1999 through September 30, 2001). The ALJ noted that plaintiff has been diagnosed with left

3 - ORDER

tibial varus malunion, post traumatic degenerative arthritis of the left ankle and endured left tibial and fibular osteotomies and ankle fusion in February 1999. The ALJ found the record demonstrated that x-rays in June of 1999, demonstrated that the gap at the tibial and fibula osteotomies were nicely bridged by his hardware, which remained in place and that his ankle fusion appeared to be solid. Tr. 22, 275, 294. The ALJ cited Dr. T. Scott Woll's assessment of August 3, 1999, that the limb is stable, there is no pain except for through the midfoot, that plaintiff has acceptably healed, but that he would be permanently limited to minimal standing, walking, and carrying less than 25 pounds. Tr. 22, 304. The ALJ properly concluded, therefore, that plaintiff's limitation was not as extreme as required by the listings. Tr. 22-24.

The ALJ further cited x-rays of November 1999 demonstrating solid healing. Tr. 23, 323. The ALJ also noted plaintiffs own claim that he could walk 50-75 feet without difficulty and that surgery had somewhat resolved symptoms. Tr. 23, 298. The ALJ also cited Dr. Richard Toy's assessment of no specific deformity and no evidence of neurovascular abnormality. Tr. 23, 300.

The ALJ also addressed an opinion by Dr. James B. Schader that plaintiff asserts establishes that listing 1.03 is met. Tr. 24. The ALJ noted that Dr. Schader's opinion addressed an old version of listing 1.03 which required full weight bearing status as opposed to effective ambulation. Tr. 24. The ALJ also noted that: despite the

4 - ORDER

fact that plaintiff walked with a cane and/or crutches, he did bear weight on his left leg; plaintiff did not have an extreme limitation on his ability to walk that seriously interfered with his abilities to initiate, sustain, or complete activities; and plaintiff was not limited in functioning of both upper extremities. The ALJ, thus, concluded that neither of the listings for 1.02 or 1.03 were met. Tr. 24. The ALJ did not err in his determination. See 20 C.F.R. pt. 404, subpt. P. App 1, § 100(B)(2)(b).

2.  Medical Providers

Plaintiff contends that the ALJ erred in failing to give proper weight to Dr. Schader's opinion. Dr. Schader opined that plaintiff had not returned to full weight bearing status and that the fusion was no longer solid. Dr. Schader further opined that plaintiff could stand/walk less than two hours, sit about six hours, occasionally lift 20 pounds, frequently lift 25 pounds, is occasionally limited in his ability to climb, balance, stoop, kneel, crouch, and crawl, frequently limited in reaching, handling, fingering, feeling, and should avoid exposure to extreme cold and vibration. Tr. 345-46, 367.

Plaintiff contends the ALJ erred in failing to give proper weight to the opinion of Dr. Robert J. Wilson that plaintiff is completely limited in his ability to even occasionally lift and/or carry any amount of weight, and is unable to stand/walk for more than

5 - ORDER

an hour. Tr. 374.

Where an ALJ chooses to disregard the opinion of a treating physician, he must set forth clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor. Fife v. Heckler, 767 F.2d 1427, 1431 (9th Cir. 1985). If a treating physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). To meet this burden the ALJ must set out a detailed analysis and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make findings. Embrey v Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

Where an ALJ chooses to disregard the opinion of a examining physician, he must set forth clear and convincing reasons for doing so if the physician's opinion is not contradicted by another doctor. Smollen v Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If the physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id. To meet this burden, the ALJ must set out a detailed analysis and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make findings. Embrey v Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

6 - ORDER

As noted above, Dr. Schader's opinion addresses an older version of the listing and his opinion fails to establish that plaintiff meets listing 1.03. Accordingly, the ALJ did not err in failing to accord this opinion enough weight to show that plaintiff met the listings. See Tr. 24 (the requirement of full weight-bearing status has been superseded). The ALJ also noted inconsistencies in Dr. Schader's opinion regarding plaintiff's ability to lift and carry and appropriately concluded that Dr. Schader's opinion, on a check the blanks form, was unreliable. See Tr. 30-31.

The ALJ found Dr. Wilson's opinion contained on another check-off form to be lacking in any explanation for the conclusions. Tr. 21. While plaintiff suggests that an x-ray provides the basis for Dr. Wilson's opinion, the ALJ found the opinion uncorroborated by the medical record. In addition, the ALJ noted the date on the report was outside the period under consideration and noted that the record showed Dr. Wilson first saw plaintiff on August 8, 2003. Tr. 31, 32. The ALJ also noted that Dr. Wilson wrote that he could not comment on the extent of plaintiff's pain while at the same time suggesting fusing the ankle as the only way to eliminate the pain on which he could not comment. Tr. 31. The ALJ appropriately found the report of little assistance to the question before him. The ALJ found the assessment of treating physician Dr. Lyudmila Tavrovsky, who concluded plaintiff had much greater capacity, more compelling with respect to the time period under consideration. Tr. 30-31.

7 - ORDER

3.  Plaintiff's Credibility

Plaintiff contends that ALJ erred in failing to credit his testimony regarding his limitations.

In rejecting a claimant's testimony, the ALJ must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test. Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. In addition, there must be no evidence of malingering. A claimant need not show that the impairments in fact did cause the symptoms. Id. at 1281-82. The claimant need not produce objective medical evidence of the symptoms themselves or their severity. Id. at 1282. Once a claimant produces evidence to meet the Cotton test and there is no evidence of malingering, then the analysis moves to the second stage.

Under the second part of the analysis, the ALJ must analyze the credibility of a claimant's testimony regarding the severity of his symptoms. The ALJ can reject a claimant's symptom testimony only if he makes specific findings, stating clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ cannot reject a claimant's symptom testimony solely because it is

8 - ORDER

not fully corroborated by objective medical findings.  Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).

In determining a claimant's credibility the ALJ may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . .  In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

The ALJ rejected plaintiff's testimony noting that plaintiff walks daily for about 50 feet without resting, goes out in a car, prepares his own meals, cleans and does laundry, and has learned to adjust his life.  Tr. 27.  The ALJ also noted the assessment of plaintiff's neighbor that plaintiff's daily activities are as normal as anyone.  Tr. 27, 235.  The ALJ noted plaintiff's heavy drinking and smoking despite medical direction to stop.[1]  Tr. 29.  Moreover, the ALJ noted that plaintiff's impairments do not impose restrictions that preclude all work.  Tr. 29.  The ALJ did not err in

---

[1] Indeed, Dr. Wilson stated that he would not attempt surgery to fuse plaintiff's ankle until he stopped smoking.  Tr. 374.

9 - ORDER

his assessment of plaintiff's testimony. See, e.g., Tr. 446-449 (noting jobs that require very little standing and walking).

4. Vocational Testimony

Plaintiff takes exception to the ALJ's reliance on vocational testimony that there are a substantial number of jobs that plaintiff could do which would allow him to elevate his leg, contending that such accommodations may not be considered. The ALJ presented a hypothetical to the vocational expert that included the restriction of the need to elevate a leg while seated. Tr. 446. While the regulations do not allow consideration of "reasonable accommodation," See SSR 00-1c, the hypothetical merely noted a restriction on plaintiff's RFC and not whether an employer would provide accommodation in a specific work place matter. The vocational expert noted that the hypothetical worker would be able to perform jobs with that restriction and did not note the jobs could only be performed if employers were willing to provide reasonable accommodation. The restriction is no different than a sit/stand option often noted in these types of cases.

5. Third Party Testimony

Plaintiff contends that the ALJ erred in failing to properly consider the questionnaire completed by plaintiff's neighbor, Lolly Rodriguez, and the testimony of Glenn Rodriguez. Lolly Rodriguez

10 - ORDER

noted plaintiff's problems walking, his pain, difficulty with chores, and trouble sleeping. Tr. 150-58, 180-88. Glenn Rodriguez noted plaintiff's problems with pain and problems walking and sitting. The ALJ correctly noted that much of the witnesses' statements were outside the scope of the relevant time period. The ALJ also noted inconsistencies in Lolly Rodriguez' questionnaire such as statements that plaintiff does not take walks, but that he does not get lost while walking. The ALJ gave appropriate reasons germane to each witness for rejecting their statements to the extent they alleged an inability to engage in work during the time period in question.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed and this proceeding is dismissed.

DATED this  15th   day of   May  , 2006.

                                            s/ Michael R. Hogan
                                        UNITED STATES DISTRICT JUDGE

11 - ORDER